## No. 1602.—H. MAILLARD v. MAX NIHOUL.

In a sale of goods in New York to a merchant in New Orleans by samples presented by an agent in New Orleans, to be delivered in New Orleans in quality equal to the samples presented, the sale is not complete until the goods are delivered, and they are at the risk of the seller until delivery takes place.

APPEAL from the Fifth District Court of New Orleans. *Leaumont*, J. *Fellows & Mills*, for plaintiff and appellant, *John H. New*, for defendant and appellee.

HOWELL, J. Plaintiff alleges that at the city of New York, on twenty-seventh September, 1866, he sold a bill of goods amounting to $721 82 to the defendant, at whose request they were shipped to New Orleans, and for which he asks judgment with seven per cent. interest.

The defendant answers denying that he purchased said goods, and averring that in New Orleans samples were shown him by an agent of plaintiff, and he agreed to take the goods if they corresponded with said samples, it being no sale until he had the opportunity of examining and accepting the goods, which he never had, as they were never delivered in New Orleans. The testimony of plaintiff's agent is, that while in New Orleans, in July and August, 1866, he took an order from defendant on plaintiff for a general assortment of confectionery, to be shipped by steamer from New York and paid for in thirty days from date of the invoice; that the goods were shipped on twenty-eighth September, 1866, on the Evening Star and a bill of lading with the invoice forwarded by mail to the defendant; that at the time of taking the order he left a copy thereof with defendant, which contains all the conditions on which it was given; that the goods were sold from samples, but there was no agreement that they should correspond with the samples; it was a sale if they were equal to or better than the samples—and those shipped were superior. Nothing was said about insurance.

H. Maillard v. Max Nihoul.

Another witness states that he presented the bill sued on to defendant, who said "he had no money and could not pay just then."

A witness for defendant states that in September or October, 1866, he was present in defendant's store when plaintiff's agent exhibited some samples and defendant purchased the goods on the samples, stipulating that they should arrive in good order and be exactly similar to the samples. Nothing was said about insuring, but the goods were to be delivered at defendant's house according to the agent's authority.

The defendant testified that in September or October, 1866, the agent came into his store and asked him to come over and look at some samples. He went with the agent to the St. Charles Hotel where he chose from the samples shown the goods he wanted, which the agent promised to *deliver in New Orleans* exactly similar to the samples, defendant reserving the right to return them if they were not so. The goods were never received. No one else was present, and nothing was said about insurance. He ordered about seven hundred and twenty pounds of goods.

The evidence is somwhat conflicting, but it seems that the negotiation or agreement was made in New Orleans instead of New York, as alleged by plaintiff, that the goods were sold from samples shown defendant, were to be shipped from New York to him in New Orleans, a delay for payment was granted, and the goods were never delivered.

Under these conditions and the circumstances of the case the goods must be considered at the risk of the seller until the purchaser had an opportunity to ascertain if they were the goods he purchased, otherwise there is no object in purchasing by samples.

It is fairly inferred from the testimony of plaintiff's agent that the goods were sold on the suspensive condition implied by the exhibition of and sale by samples in New Orleans, when the goods were at the time in New York or perhaps not manufactured. He says it was a sale if the goods were equal to or better than the samples, but he does not say that the determination of this question was left by the defendant to his sole judgment.

The judge *a quo* did not err in giving judgment for the defendant. Judgment affirmed.